IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARVIN JAMES, #110142, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:04-CV-149-MHT |
| ) | [WO] |
| ) | |
| BILLY OWENS, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Marvin James ["James"], a state inmate, on February 19, 2004. In this petition, James challenges the revocation of his probation by the Circuit Court of Montgomery County, Alabama on May 8, 2001.[1]

James filed a direct appeal of his probation revocation in which he argued that "[t]he trial court erred in not providing an attorney to represent the appellant in a probation revocation hearing." *Respondents' Exhibit 2 - Direct Appeal Brief of Marvin James* at 4.

---

[1] The record in this cases establishes that the state court imposed the challenged term of probation in 1993 for convictions of second degree possession of a forged instrument and second degree theft of property. "On September 21, 1993, [James] pleaded guilty to charges of second degree possession of a forged instrument and second degree theft of property. The circuit court sentenced the appellant [on October 12, 1993] to 15 years' imprisonment. This sentence was treated as a 'reverse split.' The term of imprisonment was postponed one year and the appellant was placed on 3 years' supervised probation." *Respondents' Exhibit 4 - Memorandum Opinion of the Alabama Court of Criminal Appeals on Direct Appeal* at 1; *see also Respondents' Exhibit 7 - Sentencing Order* at 29.

On November 21, 2001, the Alabama Court of Criminal Appeals affirmed James' probation revocation. *Respondents' Exhibit 4 - Memorandum Opinion of the Alabama Court of Criminal Appeals on Direct Appeal.* The appellate court determined that:

> [T]here is no automatic right to counsel in a probation revocation hearing. *Law* [*v. State*, 778 So.2d 249, 250 (Ala.Crim.App. 2000)]. A probationer's right to counsel is determined on a case by case-by-case basis. *See Armstrong v. State*, 312 So.2d 620 (Ala. 1975).
>
> * * *
>
> At the revocation hearing in the instant case, the appellant admitted to the alleged violations of the terms of his probation. Furthermore, there is nothing in the record to support a finding that there were substantial reasons justifying or mitigating the violations. Therefore, the appellant has failed to show that he was materially harmed by the absence of counsel. . . . In the instant case, the failure of the circuit court to inform the appellant that he could be represented by counsel was not reversible error.
>
> Based on the foregoing, the judgment of the circuit court [revoking the probation of Marvin James] is affirmed.

*Id*. at 1-2 (citation omitted). James did not further appeal his revocation and the Alabama Court of Criminal Appeals therefore issued the certificate of judgment on November 21, 2001. *Respondents' Exhibit 5*.

On July 12, 2001, James filed a state post-conviction petition pursuant to Rule 32, *Alabama Rules of Criminal Procedure*, challenging his probation revocation. In this petition, James raised the following claims for relief: (1) the trial court erred in allowing the State to revoke probation without presenting any evidence in support of the revocation; (2) the trial court erred in revoking his probation without allowing petitioner to cross-

examine the State's witnesses or otherwise contest the evidence; (3) the trial court erred in failing to adequately set out in a written order the grounds for revocation; (4) the trial court lacked jurisdiction and therefore erred in revoking probation because (i) the probationary term had legally expired, (ii) no violation report was filed with the court, and (iii) no capias warrant had been issued prior to revocation; (5) the trial court erred in not appointing counsel to represent petitioner during the probation revocation proceeding; and (6) the trial court erred in not advising petitioner of his right to the appointment of counsel for the probation revocation proceeding. *Respondents' Exhibit 7 - Record of Rule 32 Proceeding* at 5-6 - *Rule 32 Petition* at 4-5. On August 8, 2002, the Circuit Court of Montgomery County issued an order denying James' Rule 32 petition. *Respondents' Exhibit 7* at 39-40.

James appealed this decision, arguing that the trial court lacked jurisdiction to revoke probation because the imposed term of probation expired prior to revocation. *Respondents' Exhibit 7* at 60 - *Court of Criminal Appeals Docketing Statement*. In support of this claim, James asserted that: (1) the notation in the probation officer's file that petitioner was delinquent failed to establish the requisite overt affirmative act required by state law to officially begin the revocation proceeding; (2) his arrest occurred without a warrant or statement of delinquency by the probation officer; (3) the State failed to file a delinquency report prior to the revocation hearing; and (4) the petitioner did not receive a copy of the revocation papers until after the court revoked probation. *Respondents' Exhibit 8 - Rule 32 Appeal Brief of Marvin James* at 2-5. The Alabama Court of Criminal Appeals

3

affirmed the trial court's decision denying the Rule 32 petition in a lengthy and detailed memorandum opinion. *Respondents' Exhibit 10 - Memorandum Opinion on Appeal of Denial of Rule 32 Petition*. The relevant portion of this opinion reads as follows:

> The record shows that, on October 12, 1993, the trial court adopted the following standard form (Unified Judicial System Form C-7A, found in Ala. R. Crim. P. , Appendix of Forms), as its sentencing order, supplying, in the blanks provided, the sentencing instructions specific to James:
>
> > "Reverse Split Sentence
> > "The defendant's sentence is suspended, and the defendant is placed on supervised probation for a period of <u>up to 3 years</u>; however, as a first condition of probation the defendant shall serve . . . a period of <u>up to 2 yrs</u> in the custody of the Commissioner of the Department of Corrections . . . . The period of the defendant's incarceration is postponed for a period of <u>1 yr</u> . . . . On <u>October 14, 1994</u> . . . the defendant shall appear before this court and show cause, if any he/she has, why the period of incarceration should be postponed indefinitely."
>
> The case action summary shows that James next appeared before the trial court on January 5, 1994. At that appearance, he was ordered to begin paying $15 a month until all court-ordered monies were paid. The case action summary does not contain another entry until May 8, 2001, when a hearing was held [to provide James notice of his alleged probation violations] and James's probation was revoked. [At this hearing, James unequivocally admitted that he had (i) failed to report since June 2, 1994, (ii) changed his residence without permission, and (iii) failed to pay the requisite monthly fee. Although James also initially admitted several new arrests in Florida and Georgia, he subsequently stated that some of these arrests did not apply to him.]
>
> In his Rule 32 petition, as well as on appeal, James contends that the trial court did not have jurisdiction to revoke his probation because, he argues, the running of his probationary period was not tolled, before his probationary period expired, by any official act sufficient to initiate revocation

4

proceedings. He specifically contends that no official act tolled the running of his sentence, which began on October 12, 1993, and that, therefore, his probation expired on October 12, 1996. The [State's appellate] brief does not address this contention. (Instead, it addresses claims that James abandoned on appeal.)

In its answer and motion to dismiss James's Rule 32 petition, the State asserted, and the circuit court found, that the running of James's probationary period was tolled by the "State of Alabama Board of Pardons and Paroles Supervisor's Report on Delinquent Probationer." That report is dated September 7,1994. On the second page of the report is the statement, "I recommend that Marvin James be declared delinquent, a capias warrant issued for his arrest, and once arrested, he be brought before the court and his probation revoked." However, although a signature block for a "Costella W. Pouncy" is included, the report has not been signed. Morever, the record gives no indication that it was filed with the trial court or delivered to an officer with power to arrest. The unsigned report charged James with the first three violations note supra, i.e., that he failed to report, that he changed his residence without permission, and that he failed to pay the monthly installments toward the court-ordered monies.

The circuit court erred in finding that this unsigned report alone constituted an "overt or affirmative act to officially begin revocation proceedings" in September 1994. *Smitherman v. State*, 639 So.2d 569, 570 (Ala. Crim. App. 1993). *See Kiker v. State*, 524 So.2d 384, 386 (Ala. Crim. App. 1988) (for the probation officer's delinquency report to qualify as "an official act sufficient to begin revocation proceedings" and, consequently, to toll the running of the probation period, "the probation officer's written statement must be in compliance with § 15-22-54(d) and have been delivered, prior to [the expiration of the probation period], to an officer with arrest power, along with a request to arrest the probationer"), *overruled on other grounds by Boles v. State*, 717 So.2d 877 (Ala. Crim. App. 1998); *Peoples v. State*, 439 So.2d 774, 775 (Ala. Crim App. 1983) (same); Rule 27.4(a)(1), Ala. R. Crim. P. (which provides, as one of two designated methods for initiation of revocation proceedings, that the probation officer, who is responsible for supervision of the probationer and has reasonable cause to believe that he or she has violated a condition of probation, may petition the sentencing court to revoke probation). *See, e.g., Watkins v. State*, 455 So.2d 160, 163 (Ala. Crim. App. 1984) (the probation officer's notation in his file that the

5

probationer was delinquent and the listing of the probationer as delinquent in the Probation Office computer were not official and overt or affirmative acts; they "simply [were] not sufficient to initiate revocation proceedings and toll the running of the probation period"). We find that the unsigned, unfiled report was an unofficial act insufficient to begin probation proceedings. *See also People v. Simmons*, 169 Misc. 2d 223, 643 N.Y.S. 2d 919 (N.Y. Sup. 1996) (where the declaration of delinquency had not been signed or filed, the trial court did not have jurisdiction to revoke probation after the probationary period had expired.

However, attached to the unsigned report is "Supplement to Delinquent Charges," which is signed by a different probation officer and dated May 7, 2001, recommending that James's probation be revoked on the fourth charge, i.e., failure to avoid new arrests. We find that this petition, when considered with James's appearance at the hearing, was an official act sufficient to begin probation revocation proceedings. *See, e. g., Boles v. State*, 717 So.2d 877 (Ala. Crim. App. 1998) (the prosecutor's motion to revoke probation, the probationer's receipt of notice of the State's intent to seek revocation, and the probationer's appearance in court pursuant to that notice were sufficient).

The question then is whether "the revocation proceedings [were] instigated during the actual court-ordered probationary period, or before the end of the maximum statutorily allowed period." *Owens v. State*, 728 So.2d 673, 678 (Ala. Crim. App. 1998). The court-ordered period was "a period of up to 3 years." The length of the "maximum statutorily allowed period" depends on whether the trial court sentenced James to a "reverse split sentence," pursuant to the Split Sentence Act, § 15-18-8, or suspended the execution of his entire sentence, pursuant to § 15-22-50, ordering that he serve up to three years' probation and that one of the conditions of that probation be that he serve up to two years' incarceration. In the latter case, § 15-22-54(a) would have mandated that the maximum statutorily-authorized period was five years, and James's probation would have expired before any official act tolled the running of the probationary term. However, if the trial court's sentencing was pursuant to the Split Sentence Act, the maximum statutorily-authorized period for the probationary term was 15 years. *Cf. Burge v. State*, 623 So.2d 450, 451 (Ala. Crim. App. 1993) ("The legislature, in enacting § 15-18-8, obviously intended to provide that a defendant could be sentenced to imprisonment not exceeding three years, after which he could be placed on probation for the remainder of his sentence, even if that sentence was 15

6

years' imprisonment.").

In determining whether the trial court gave James a split sentence or a suspended sentence, we note that the form adopted by the trial court as its sentence order -- Unified Judicial System Form C-7A -- is problematic and ambiguous. Its declaration that "[t]he defendant's sentence is suspended," considered together with the directives that the defendant be placed on probation and that, "as a first condition of the probation," the defendant be incarcerated for a period, albeit postponed, could be interpreted as suspending James's entire sentence and placing him on probation, with confinement a condition of that probation. However, when we consider those provisions in the context of the entire standard form, we find that the trial court sentenced James to a split sentence rather than to a suspended sentence. The form, in addition to offering the option of "Reverse Split Sentence," offers three other split-sentence options. Although each of those other options uses the same problematic language, they are clearly intended to invoke the provisions of § 15-18-8. In addition, the standard form has the option "Sentence Suspended," whereby the sentence is suspended and the defendant is placed on probation. While there are indicia in the record before us and in the revocation-of-probation record that are to the contrary, they do not reflect the intent of the sentencing court; rather, they are [an] interpretation of that intent. However, we find, in considering all the circumstances, that James's sentence was imposed under § 15-18-8. (Thus, we find that a remand for determination of the sentencing judge's intent is unnecessary.)

Based on the foregoing, we hold that, because James was sentenced under the Split Sentence Act, the maximum statutorily-authorized period for the probationary term was 15 years, and it had not expired at the time the revocation proceedings were officially initiated against him. Moreover, James had not been formally discharged from probation nor had he successfully completed his probation. "'[U]nder state law, the period of probation does not end until the probationer has satisfactorily fulfilled the conditions of his probation or [until] he receives a formal discharge from the trial court.'" *Young v. State*, 552 So.2d 879, 880 (Ala. Crim. App. 1989) (quoting *Sherer v. State*, 486 So.2d 1330, 1331 (Ala. Crim. App. 1986). *See, e.g., Hamilton v. State*, 441 So.2d 1035 (Ala. Crim. App. 1983) (the appellant did not fulfill his conditions of probation, including that he serve 60 days in the county jail; therefore, the period of probatoin did not expire before the

>State filed its motion to revoke probation). Therefore, the trial court had jurisdiction to revoke James's probation.
>
>Accordingly, the circuit court's dismissal of James's Rule 32 petition is affirmed.

*Respondents' Exhibit 10 - Memorandum Opinion on Appeal of Denial of Rule 32 Petition* at 1-8 (footnotes omitted) -- *James v. State*, 886 So.2d 179 (Ala.Cr.App. 2003)(table decision), *cert. denied*, *Ex Parte James*, 899 So.2d 315 (Ala. 2004). Upon denial of certiorari by the Alabama Supreme Court, the Alabama Court of Criminal Appeals issued the certificate of judgment on February 16, 2004. *Respondents' Exhibit 11*.

James filed the instant 28 U.S.C. § 2254 petition on February 19, 2004. In this petition, James asserts that the "circuit court was without jurisdiction to revoke probation." *Petition for Habeas Corpus Relief* at 5. The respondents filed an answer addressing the petition in which they argue that federal habeas relief is not warranted as the Alabama Court of Criminal Appeals properly adjudicated James' challenges to the trial court's jurisdiction on the merits on appeal from the denial of the Rule 32 petition. *Respondents' May 4, 2004 Answer - Court Doc. No. 14* at 7-8.

Upon review of the § 2254 petition, the answer of the respondents and James' responses to the answer, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II. DISCUSSION

### A. Claims Predicated on Violations of State Law

James maintains that the state court lacked jurisdiction to revoke his probation as the probationary term had expired prior to the initiation of revocation proceedings. In support of this claim, James asserts that the trial court sentenced him to a suspended sentence under Alabama Code § 15-22-50 and not to a reverse split sentence under Alabama Code § 15-18-8, the Split Sentence Act. James also argues that the State failed to initiate the probation revocation proceeding in accordance with state law.

To the extent that James bases his challenges to the trial court's jurisdiction on alleged violations of state law, his claims provide no basis upon which federal habeas relief can be granted as they involve the state courts' interpretation and application of state law. *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988). A federal court has no authority to re-examine state court determinations on questions of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991).

### B. Adjudication of Claims by the Alabama Court of Criminal Appeals

The Alabama Court of Criminal Appeals determined that the trial court had jurisdiction to conduct the probation revocation proceeding and acted within its prescribed authority when deciding to revoke probation. *Respondents' Exhibit 10 - Memorandum Opinion on Appeal of Denial of Rule 32 Petition*. Review of the instant habeas petition with respect to any constitutional challenge to the revocation of probation is therefore governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

Penalty Act. Under the provisions of 28 U.S.C. § 2254(d), with respect to claims adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Court held that:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853 (2003). Additionally, federal review

in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

    Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing

11

evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . ." 538 U.S. at 636, 123 S.Ct. at 1851.

In light of the foregoing, James is entitled to no relief as the state court properly adjudicated his claims challenging his probation revocation on the merits. *Williams*, 529 U.S. at 404-405, 120 S.Ct. at 1518-1523 (2000). Specifically, the decision of the Alabama Court of Criminal Appeals affirming the trial court's revocation decision was not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented to the state courts.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Marvin James be denied and that this case be dismissed with prejudice. It is further

ORDERED that on or before April 12, 2006 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised

that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 31st day of March, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE